108 F.3d 1378
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
William P. WELLS, Plaintiff-Appellant,
v.
NORFOLK SOUTHERN RAILWAY CO., Defendant-Appellee.
 No. 96-5267.
 United States Court of Appeals, Sixth Circuit.
 March 6, 1997.
 
 Before: NORRIS and MOORE, Circuit Judges, and RUSSELL, District Judge.*
 OPINION
 MOORE, Circuit Judge.
 
 
 1
 Plaintiff-Appellant William Wells sued his employer, Norfolk Southern Railway Company, under the Federal Employers' Liability Act (FELA), claiming that long-term workplace exposure to loud noise has impaired his hearing. On defendant's motion, the magistrate judge hearing the case determined that the action was time barred and dismissed it. Wells appeals, arguing that the statute of limitations did not begin to run until recently, when he discovered that the workplace noise exposure was the cause of his hearing loss. For the reasons stated below, we affirm the dismissal.
 
 I. FACTS
 
 2
 Wells is 52 years old, with a high school diploma and some college education. J.A. at 31-32. He has worked for defendant since 1970 as an electrician and a supervisor, id. at 32, and has been exposed to high noise levels for at least part of every workday during that period. Id. at 46-47 (noting exposure to noise from locomotive engines, brake valves, horns, and radios). He states that he has had no exposure to harmful noise other than at work. Id. at 46.
 
 
 3
 Starting in 1979, the railroad began testing Wells's hearing. See id. at 66-67 (1979 test results); id. at 68-106 (later test results and reports). The test reports show both an objective and a subjective (self-reported) decline in Wells's hearing over the course of 15 years. See id. at 66 (self reports hearing as "good" in 1980); Supp. to Record (document dated 7/13/88 and signed by Wells stating hearing is "poor"); J.A. at 89 (document dated 5/31/89 and signed by Wells stating hearing is "poor"). Wells acknowledges that "[a]t sometime in the late 1980s [he] was required to wear hearing protection" at work. Id. at 50. Company medical reports indicate that Wells told examiners that he wore hearing protection on the job throughout the 1980s. Id. at 68 (dated 3/29/82); id. at 81 (dated 7/29/86); id. at 89 (dated 5/31/89). Wells claims that he never saw most of these documents until after 1991. See id. at 123-24 (Wells Affidavit). The record also contains documents in which Wells acknowledged that he understood that, because of his high worksite noise exposure, he was required to participate in a "Hearing Conservation Program." Id. at 57 (dated 3/27/84); id. at 58 (dated 10/6/84).
 
 II. JURISDICTION
 
 4
 District courts have jurisdiction over FELA actions under 45 U.S.C. § 56. The parties consented to adjudication by a magistrate judge under 28 U.S.C. § 636(c)(1). Appellate jurisdiction lies under 28 U.S.C. § 1291. See 28 U.S.C. § 636(c)(3) (allowing appeal to court of appeals from magistrate judge judgment).
 
 III. DISCUSSION
 
 5
 The Federal Employers' Liability Act, 45 U.S.C. §§ 51-60, is a broadly remedial statute designed to ensure that railroad workers are compensated for job-related injury. See Aparicio v. Norfolk & Western Ry., 84 F.3d 803, 807 (6th Cir.1996). The law contains a uniform three-year statute of limitations. 45 U.S.C. § 56 ("No action shall be maintained under this chapter unless commenced within three years from the day the cause of action accrued."). The so-called "discovery rule" applies in FELA cases: an action accrues, and the statute of limitations begins to run, "when a reasonable person knows or in the exercise of reasonable diligence should have known of both the injury and its governing cause." Aparicio, 84 F.3d at 814 (quoting Fries v. Chicago & Northwestern Transp. Co., 909 F.2d 1092, 1095 (7th Cir.1990)). See Urie v. Thompson, 337 U.S. 163, 170 (1949) (FELA action does not accrue until employee discovers injury, because Court "do[es] not think the humane legislative plan intended such consequences to attach to blameless ignorance."). The "due diligence" requirement means that a plaintiff who has reason to suspect that his injury is work related must take steps to see whether this is, in fact, the case. See Aparicio, 84 F.3d at 815 (noting "the purpose of the discovery rule articulated in Urie requiring Federal Employers' Liability Act plaintiffs to use reasonable diligence to discover the cause of an injury once the injury manifests itself")[1]; Fries, 909 F.2d at 1095 ("That this rule imposes on injured plaintiffs an affirmative duty to investigate the potential cause of his injury has not been lost on the courts.").
 
 
 6
 We review de novo the lower court's decision to grant summary judgment on statute of limitations grounds. Aparicio, 84 F.3d at 814. The party seeking summary judgment has the initial burden of showing that there is no genuine issue as to any material fact. Johnson v. United States Postal Service, 64 F.3d 233, 236 (6th Cir.1995). The nonmoving party may defeat the motion by presenting evidence of specific facts which, viewed in the most favorable light, indicate that there is a genuine issue for trial. Id. Summary judgment is appropriate only "if the pleadings ... and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). The court is not to weigh evidence in making this decision; summary judgment is inappropriate if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986) (citation omitted).
 
 
 7
 Wells filed suit on June 24, 1994. J.A. at 5 (Complaint). He concedes, and the record indicates, that he knew of his hearing loss for more than three years before this date. Appellant's Br. at 14; Appellant's Reply Br. at 2. Wells claims, however, and we therefore assume, that he did not know that this loss was work related. See J.A. at 122, 124 (Wells Affidavit). As there is no evidence which directly contradicts this, the question before us becomes whether the only reasonable conclusion which can be drawn from the available evidence is that Wells should have known, or through reasonable diligence determined, before June 24, 1991 that this hearing loss was a result of his workplace noise exposure.
 
 
 8
 A reasonable person in Wells's position would have realized, or would have taken steps to find out, that the injury was work related. Wells acknowledges that he received and read a medical report dated 9/8/89. See J.A. at 121-22 (Wells Affidavit) (quoting report); id. at 128 (copy of report). This report stated that "in order to protect [his] hearing, [Wells was] required to wear hearing protectors on the job whenever [he was] exposed to loud noise," and instructed Wells to contact his boss in order to arrange for further testing to determine whether his hearing loss required attention. Id. at 128 (capitalization modified). A reasonable person who received such a report would understand that there was a danger of hearing loss from workplace noise.
 
 
 9
 Wells also admits that he received a 1990 letter from the railroad's director of medical services informing him that "[i]f you are working in noise, you must wear your hearing protection devices as outlined in the accompanying instructions." See id. at 129 (letter to Wells dated 12/27/90); id. at 122 (Wells Affidavit) (stating that he received and read letter). Similarly, Wells knew that his workplace noise exposure meant that he had to participate in a hearing conservation program. Id. at 57 (signed statement dated 3/27/84); id. at 58 (signed statement dated 10/6/84) (stating that he had "received instructions relative to hearing conservation"). A reasonable person whose employer tells him that he must wear hearing protection equipment if he is exposed to noise[2] (which he was), requires him to participate in a hearing conservation program, and gives him annual hearing tests would infer that his job poses a threat to his hearing. Thus, Wells should have known prior to June 1991 that his hearing loss might be related to workplace noise exposure.
 
 
 10
 Wells's response to this argument is that he, an uneducated worker, believed that his hearing loss was merely the natural effect of his getting older. Appellant's Br. at 16; J.A. at 122-24 (affidavit). The evidence noted above, however, provided Wells with ample notice that workplace noise, not just age, was a likely cause of the loss. Wells further argues that his employer actively misled him as to the probable cause of the loss. However, these supposedly misleading statements turn out to be no more that acknowledgments that hearing tests do not necessarily indicate the cause of hearing loss. See id. (citing as misleading a statement that loss might have been caused by "disease, the natural process of aging" or other factors). Wells's allegations that the railroad never specifically told him that workplace noise was actually causing him to lose his hearing do not excuse his apparent failure to exercise reasonable diligence in investigating his increasing deafness. Wells had, long before the crucial June 24, 1991 date, both actual knowledge of his injury and ample evidence to suggest that workplace noise had caused that injury.
 
 
 11
 The Fifth Circuit's opinion in Smith v. States Marine Int'l, Inc., 864 F.2d 410 (5th Cir.1989), does not support Wells's position. Although Smith suggests that many people would, like Wells, attribute a loss of hearing to increasing age rather than to noise exposure, the cases differ in an important aspect: there is no indication that Smith's employer had any sort of hearing conservation program, provided earplugs or other hearing protection, or ever tested Smith's hearing. Id. at 411; id. at 413 (Smith had no "notice of the dangers of exposure to loud noise."). In short, Smith's employer had never provided him with any information which would have suggested a connection between job-related noise exposure and deafness. Plaintiff in the case at bar, in contrast, was given ample warning of just such a connection, and Smith is therefore inapposite.
 
 IV. CONCLUSION
 
 12
 For the reasons discussed above, we hold that the court below correctly dismissed Wells's claim as time barred. AFFIRMED.
 
 
 
 *
 The Honorable Thomas B. Russell, United States District Judge for the Western District of Kentucky, sitting by designation
 
 
 [1]
 Because Wells admits that he has long had actual knowledge of his injury, we need not address any discrepancy between, on the one hand, this statement in Aparicio (and Urie ), and on the other, earlier language in Aparicio (taken from Fries ), as to whether constructive, as opposed to actual, knowledge of the injury itself may constitute discovery
 
 
 [2]
 Wells notes that he began wearing hearing protection in 1989 or 1990. Id. at 41 (Responses to Interrogatories)